846 F.2d 74
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William L. GALLO, Defendant-Appellant.
 No. 87-5151.
 United States Court of Appeals, Fourth Circuit.
 Argued March 11, 1988.
Decided May 12, 1988.
 
 John Preston Bailey (Cheryl Dean Riley, Bailey, Byrum & Vieweg on brief) for appellant.
 Martin P. Sheehan (William A. Kolibash, United States Attorney, Bruce M. Smith, Assistant United States Attorney on brief) for appellee.
 Before DONALD RUSSELL and JAMES DICKSON PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellant William Gallo was convicted of seven counts involving receiving, conspiracy to receive, and causing another to receive child pornography transported through the mails in violation of 18 U.S.C. Sec. 2252 and 18 U.S.C. Sec. 2. He assigns numerous errors which, with the exception of a complaint about duplicate counts, lack merit.
 
 
 2
 * Counts V and VI are word for word identical, charging Gallo
 
 
 3
 with causing Betty Lou Smith to receive child pornography on
 
 
 4
 or about April 15, 1986. The government asserts that the
 
 
 5
 two identical counts were intended to refer to two separate
 
 
 6
 mailings, and points out that two distinct mailings were
 
 
 7
 proved at trial: one on April 16, the other on April 22.
 
 
 8
 The government argues that it is not obliged to allege dates
 
 
 9
 with precision if the formulation "on or about" is used, and
 
 
 10
 believes that the two counts, while indistinguishable from
 
 
 11
 each other, nevertheless gave adequate notice of the nature
 
 
 12
 and approximate time of the offenses being charged.
 
 
 13
 Indistinguishable, duplicate counts in an indictment make it
 
 
 14
 impossible to know whether the grand jury intended to indict
 
 
 15
 for two distinct crimes or which alleged acts lead to each
 
 
 16
 indictment, fail adequately to put the defendant on notice
 
 
 17
 that two distinct crimes are being charged, and run a risk
 
 
 18
 of confusing the trial jury.
 
 
 19
 The government suggests that, because the appellant did not
 
 
 20
 request a bill of particulars, he has waived his right to
 
 
 21
 object to any lack of specificity in these counts. But a
 
 
 22
 duplicate count does not merely fall below some desirable
 
 
 23
 level of specificity; it is invalid from the moment it is
 
 
 24
 handed down. The government's argument fails to recognize
 
 
 25
 that "a bill of particulars cannot save an invalid
 
 
 26
 indictment." Russell v. United States, 369 U.S. 749, 770
 
 
 27
 (1962). Since a bill of particulars could not have saved
 
 
 28
 this indictment, failure to request one certainly did not
 
 
 29
 waive the right to question the indictment's validity.
 
 
 30
 Accordingly, count V must be dismissed, and the sentence
 
 
 31
 based on it must be vacated.
 
 II
 
 32
 Throughout the period during which the offenses were being committed Gallo was an inmate in first the West Virginia State Penitentiary and then the Marshall County Jail. It is undisputed that, beginning in June of 1984, all his nonprivileged mail was opened, read, and in many cases photocopied.
 
 
 33
 Gallo received magazines and mailings from a variety of foreign addresses. It was apparent in the course of the ordinary search for contraband to which all incoming mail is subjected that many of these mailings contained pornographic material involving minors which not only violated prison regulations, but could not legally be mailed or caused to be mailed. As these are not the sorts of materials which one ordinarily receives unsolicited, and as a prison official had observed Gallo photocopying a form letter in the prison library, the prison authorities had every reason to believe that his correspondence solicited pornography. This legitimate inference was strengthened by the fact that Gallo was then serving a sentence for sexual assault.
 
 
 34
 Much of the evidence presented at trial was obtained by means of censoring Gallo's mail. Gallo argues that this censorship violated his first and fourth amendment rights and, because it was not performed in compliance with the prisons' own regulations, violated his due process rights as well.
 
 
 35
 The prison officials described their handling of Gallo's mail as "monitoring." Regardless of the terminology, we believe they were censoring his mail within the meaning of Supreme Court precedents applying the first amendment. Their photocopying was tantamount to seizure within the meaning of the fourth amendment, and their confiscation of pornographic pictures was also a seizure.
 
 
 36
 In Procunier v. Martinez, 416 U.S. 396, 409 (1974), the Court recognized that a prisoner's mail, whether incoming or outgoing, involves communication with persons who are not subject to prison restraints and discipline. For this reason, the Court explained, censorship of a prisoner's correspondence cannot be justified by the legal status of prisoners. Instead courts must "turn for guidance, not to cases involving questions of 'prisoners' rights,' but to decisions of this Court dealing with the general problem of incidental restrictions on First Amendment liberties imposed in furtherance of legitimate governmental activities." 416 U.S. at 409.
 
 
 37
 Relying on precedents derived from the application of the first amendment in other contexts, the Court held that censorship is justified if the following criteria are met:
 
 
 38
 First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression.... Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.
 
 
 39
 416 U.S. at 413. The Court noted that an example meeting these criteria would be censorship of letters containing "information concerning proposed criminal activity, whether within or without the prison." 416 U.S. at 413.
 
 
 40
 The state and county prison officials censored Gallo's mail to detect his solicitation and receipt of pornography. His correspondence about this contraband was a type of criminal activity which, according to the standards explained in Procunier, is not protected by the first amendment.
 
 
 41
 The same facts that show that censorship of Gallo's mail did not violate the first amendment establish the legitimacy of copying or seizing his correspondence with respect to the fourth amendment. Gallo could have no legitimate expectation of privacy in the solicitation and receipt of contraband in the prisons where he was confined. Cf. Hudson v. Palmer, 468 U.S. 517, 527-28 (1984).
 
 
 42
 Procunier, 416 U.S. at 417, also requires that the decision to censor be accompanied by minimum procedural safeguards including notice of censorship to the sender and recipient of mail and an opportunity to protest to an official other than the censor. Penitentiary and jail officials substantially complied with these procedures. They gave Gallo notice that his mail was being monitored. He had an opportunity to protest through the prison grievance procedures. There is no suggestion in the record that mail room employees who censored his mail also decided grievances. Although the purveyors of child pornography were not notified that Gallo's mail was being censored, this omission would only affect whatever rights, if any, Gallo's correspondents had under the first amendment. See Procunier, 416 U.S. at 418-19. Gallo cannot rely on the omission to suppress the evidence of his solicitation and receipt of pornographic contraband.
 
 
 43
 Gallo further contends that, even if the first and fourth amendments permitted censorship of his mail, the fact that it was not performed in accordance with relevant prison regulations violated his due process rights.
 
 
 44
 The government concedes that prison officials did not adhere to all of the censorship regulations promulgated by the prison. The Supreme Court, however, has held that "prison regulations [that] place no substantive limitations on official discretion ... create no liberty interest entitled to protection under the Due Process Clause." Olim v. Wakinekona, 461 U.S. 238, 249 (1983). None of the regulations which Gallo contends were violated impose any substantive limitations. Therefore, a failure to follow these procedural standards did not violate the due process clause.
 
 
 45
 We find no error in the court's refusal to suppress evidence obtained by censorship and seizure of Gallo's mail.
 
 III
 
 46
 From Gallo's mail, the law enforcement authorities learned of a scheme he had contrived to avoid confiscation of the child pornography he solicited. He arranged to have Betty Lou Smith rent a post office box on behalf of both of them, and he directed his foreign correspondents to send photographs to that post office box, from which Smith would collect them. After observing Smith pick up a package which had previously been searched pursuant to a warrant and found to contain illegal child pornography, authorities obtained a search warrant for her apartment. There they found evidence used against Gallo at trial.
 
 
 47
 Because we have held that the censoring of Gallo's mail was not unconstitutional, his argument that all evidence gained from the search of Smith's apartment must be excluded as "fruit of the poisonous tree" naturally falls.
 
 
 48
 Gallo also challenges the validity of the warrant obtained to search Smith's residence. He asserts that Smith held his mail only as a bailee for himself and that, despite her actual possession, he had a reasonable expectation of privacy in the containers and areas searched. He contends that he therefore has standing to challenge a search which violated that reasonable expectation of privacy.
 
 
 49
 Whether we choose to speak in terms of a "bailment" as some courts have done, see, e.q., United States v. Freire, 710 F.2d 1515 (11th Cir.1983), the decisive question is whether, on the facts of this case, Gallo proved that he had a reasonable expectation of privacy in the containers and areas searched. See Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); Rakas v. Illinois, 439 U.S. 128, 143 (1978). We hold that he has not carried that burden. The apartment searched was not his apartment. The record does not suggest that the chests in which the damaging evidence was found belonged to him. Imprisoned as he was, Gallo could not hope to exercise any control over those locations, and there is no evidence that he ever had exercised any control. While Gallo undoubtedly hoped and intended that these areas would not be searched by law enforcement officers, this has little to do with the objective reasonable expectation required for standing. The fact that some of the materials seized in the search were his property is not determinative. The fourth amendment inquiry focuses on expectations of privacy in the location or containers searched, not in property interests in items discovered in the search. Rawlings, 448 U.S. at 105-06; Rakas, 439 U.S. at 143.
 
 IV
 
 50
 Gallo assigns other errors which can be disposed of summarily. He asserts that the district court abused its discretion by refusing to excuse for cause a juror who, because of his aversion to pornography, admitted that "[i]t would be hard" for him to base his decision solely on the evidence and the court's instructions, but promised that "I will do my best." We see no abuse of discretion. While it will often be difficult for jurors to set aside their own predispositions, it will not always be impossible. Latitude must be left to the trial judge, who observes the demeanor of the prospective juror, to decide whether the juror with predispositions must be excused despite his willingness to "do his best." With respect to this juror, the court ruled:
 
 
 51
 [H]e has beliefs about these types of things and even though it would be difficult for him, as he indicated, to make a determination in this case, he indicated a strong moral character and a strong commitment to his responsibility as a juror, and the Court believes that he could be an objective and a fair juror and render a verdict based upon the law and on the evidence as given in this case.
 
 
 52
 The burden is on Gallo to show that the juror had "a partiality that could not be laid aside," Murphy v. Florida, 421 U.S. 794, 800 (1975), and the single phrase upon which Gallo relies to make this showing does not persuade us.
 
 
 53
 Nor did the district court abuse its discretion by denying Gallo's request to show portions or all of the movie "The Blue Lagoon" to the jury. Even making the doubtful assumption that the movie had some relevance to the case, that relevance was surely so marginal that the court could properly exclude it as an undue waste of time under Rule 403 of the Federal Rules of Evidence.
 
 
 54
 There is no merit to Gallo's objection that no expert testified about the age of the persons depicted in the photographs or to his assertion that, as to some of the photographs, the unaided jury could not determine the age of the depicted persons beyond a reasonable doubt. Expert testimony as to age, while perhaps helpful in some cases, is certainly not required as a matter of course. To the extent Gallo is now attacking the sufficiency of the evidence, he did not take the steps necessary to preserve that issue for appeal.
 
 
 55
 Finally, the district court's instructions to the jury accurately and adequately explained the elements of the crime, correctly defined the term "lascivious," and placed that factor in its proper context.
 
 
 56
 The judgment of the district court is affirmed in part and reversed in part, and the case is remanded for dismissal of count V and vacation of the sentence imposed on that count.