# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3414-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

OMAR SALOUKHA,

     Defendant-Appellant.

_____

> Submitted January 20, 2022 – Decided January 28, 2022
>
> Before Judges Alvarez and Haas.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 18-03-0252.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A Passaic County grand jury charged defendant Omar Saloukha in a four-count indictment with two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b) (counts one and three); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(a) (count two); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(iii) (count four). Following a multi-day trial, the jury convicted defendant of all four charges.

The trial judge merged count one into count two and sentenced defendant to eight years in prison. The judge merged count three into count four and sentenced defendant to a consecutive eight-year prison term, subject to a five-year period of parole ineligibility. The judge also sentenced defendant to parole supervision for life and ordered him to register as a Megan's Law offender.

Defendant appeals his convictions and sentence. We affirm.

I.

The charges against defendant arose from the allegations that he possessed child pornography on his computer, and that some of that pornography was available for download by other users of a peer-to-peer computer network. The events leading to the indictment occurred on February 5, 2017, and May 2, 2017.

2

In February, Detectives Juan Passano and Mitchell Bariso of the Passaic County Internet Crimes Against Children's Task Force were investigating peer-to-peer networks to locate child pornography. Passano testified he was able to download three video files depicting sex acts committed with prepubescent children from a specific "IP address." An IP address is a unique number assigned by the internet service provider and linked to a physical address for a customer. The IP address allows one computer to communicate with other computers over the internet. The detectives served the internet service provider with a subpoena and learned that the IP address had been assigned to a home in Paterson.

On May 2, 2017, the detectives executed a search warrant at the Paterson house. They encountered defendant and his three brothers. All four men lived in the home with their father, who owned the property and also operated a business on the first floor.

Passano informed defendant and his brothers that the police were conducting a child pornography investigation. While defendant's brothers were attentive, Passano noticed defendant "appeared a little nervous" and was "looking down to the ground." Passano decided to speak to defendant in a separate room. Passano asked defendant "if he knew what [the police] were

3

there for." Defendant "said he came across child pornography accidentally. And he said that his brothers weren't involved with it."

Defendant stated he lived in a bedroom in the attic. Bariso seized a laptop computer, a tower computer, DVD-Rs, SD cards, and two cell phones from defendant's room. The detectives then brought defendant to headquarters for questioning.

Passano read defendant the standard Miranda[1] warnings and recorded the interview. Passano asked defendant, "do you know why you're here?" Defendant replied, "I don't know why I'm here. It can't happen. Like I don't even remember. It did happen by accident." Defendant also stated, "I know it's illegal." Passano again asked if defendant knew "what we're talking about[.]" Defendant answered, "About the child pornography. . . . You know, but I know it's illegal to watch it. I know it's illegal to pick it up."

Defendant identified the two specific computer programs he used to download the videos. He stated, "Sometimes I look at -- I'll look at it, only once in a while." Passano asked defendant whether his three brothers were "into this stuff, child pornography?" Defendant replied, "No, . . . I told you -- I told you (indiscernible)."

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

 A-3414-18

Detective Brian Singley testified on behalf of the State as an expert in computer forensics and media analysis. Singley examined the devices the police seized from defendant on May 2, 2017. Singley found over 2,600 videos and images of prepubescent males and females engaged in sexual activity on defendant's laptop computer and SD card. The computer had three sharing programs installed on it and Singley found sixty-seven videos and nine images in the "shared" or "incoming" folder. Singley described this folder as the location where downloaded files can be shared with other users. Singley found prior searches for child pornography in two of the file sharing programs. In the third program, he observed that two files were pending download.

At trial, the State showed the jury thirty videos found in the peer-to-peer share folder, 110 videos or images found in other locations in defendant's computer, and the three videos Passano downloaded from defendant's computer in February 2017. Singley described the content of each of these items by stating, for example, "I observe what appears to be a prepubescent female sitting down"; "I observe what appears to be a prepubescent female taking her clothes off"; "I observe . . . what appears to be a prepubescent boy who's nude"; "I observe what appears to be a prepubescent male with his pants down."[2]

---

[2] Defendant did not testify or present any witnesses on his own behalf.

On appeal, defendant raises the following contentions:

POINT I

DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BY EXPERT TESTIMONY THAT THE VIDEOS AND IMAGES SHOWN TO THE JURY DEPICTED PREPUBESCENT CHILDREN ENGAGING IN SEX ACTS BECAUSE THAT WAS THE ULTIMATE ISSUE IN THE CASE AND THE JURY WAS JUST AS QUALIFIED AS THE EXPERT TO MAKE THAT DETERMINATION.

POINT II

THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY FAILING TO CHARGE THE JURORS THAT THEY MUST DISREGARD DEFENDANT'S OUT-OF-COURT STATEMENT IF THEY FIND THE STATEMENT NOT CREDIBLE AND BY FAILING TO GIVE THE CAUTIONARY INSTRUCTION CONCERNING ORAL STATEMENTS AS REQUIRED BY STATE V. JORDAN[3] AND STATE V. KOCIOLEK.[4]  (Not Raised Below).

POINT III

TWO DISTINCT ERRORS IN THE SENTENCING PROCEEDINGS REQUIRE A REMAND FOR RESENTENCING.  (Partially Raised Below).

---

[3]  State v. Jordan, 147 N.J. 409, 428 (1997).

[4]  State v. Kociolek, 23 N.J. 400 (1957).

6

A. The Textbook Natale[5] Violation. (Not Raised Below).

B. The Textbook Yarbough[6] Violation.

II.

In Point I, defendant argues the trial judge erred by permitting Singley to provide expert testimony concerning the ages of the children in the videos and still images he recovered from defendant's devices. As noted above, Singley gave the jury a brief description of what was depicted in each of the 143 pieces of child pornography the State presented at trial. Singley stated the individuals appeared to be either prepubescent males or females and briefly described what was depicted in the media. Defendant asserts Singley was not qualified as an expert in the field of child development and, therefore, the court should have barred him from narrating the materials in this fashion. Defendant also contends Singley usurped the role of the jury by providing testimony on the ultimate issue in the trial, that is, whether the individuals in the exhibits were children.

The admissibility of evidence, including expert testimony, is a matter within the sound discretion of the trial judge. State v. McGuire, 419 N.J. Super.

---

[5] State v. Natale, 184 N.J. 458 (2005).

[6] State v. Yarbough, 100 N.J. 627 (1985).

7

88, 123 (App. Div. 2011). Under this deferential standard, appellate courts "review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)).

In child pornography cases, expert testimony is not necessarily required to establish the ages of children that are depicted in the images. State v. May, 362 N.J. Super. 572, 593 (App. Div. 2003). In May, we observed:

> Notwithstanding the potential pitfalls, we are constrained to observe that, in particular circumstances, determinations of an age threshold based on outward appearance alone can be seen to be as valid an exercise of common knowledge as of expert opinion. Whether or not a person is older or younger than sixteen years of age may well be easier to determine than a precise age. We cannot conclude that such evaluations are always, in the terms of the standard test, "beyond the ken of the average juror[,]" . . . or that experts are invariably better equipped than laypersons are to make the judgment based on appearance alone.
>
> [Id. at 594 (citation omitted).]

"Like any other fact, age is, of course, for the determination of the jury." State v. Carlone, 109 N.J.L. 208, 211 (Sup. Ct. 1932). "[W]hether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony . . . must be determined on a case by case basis." United States v. Katz, 178 F.3d 368, 373 (5th Cir. 1999). Thus, if

8

the "disputed images . . . depict either very young child-models or older 'models of sufficient maturity,'" expert testimony is not required "because a layperson can plainly make the determination whether the person so depicted is younger than sixteen." May, 362 N.J. Super. at 594 (quoting Katz, 178 F.3d at 373).

In this case, the trial judge conducted a pre-trial hearing to review the videos and images the State planned to present at trial. During the course of the hearing, Singley described these items. The judge stated she initially "had some concerns about [Singley] describing what appeared to be children on the record." This concern was based upon her "impression that these videos would contain males or females between the ages of [sixteen, seventeen] or [eighteen]." However, the judge changed her position after watching thirty of the videos. The judge explained:

> Having now watched [thirty] of these videos it is clear to the [c]ourt that . . . all of these videos contain prepubescent males and females, some of which are infants, some of which are toddlers. I mean there is no question in this [c]ourt's mind that these are not adults . . . . These are . . . babies in some of these pictures.

After reviewing our decision in May, the judge decided to permit Singley to describe the images at trial in the fashion described above. The judge stated:

> . . . I think it would be appropriate for [Singley] in making a complete record, an accurate record, and a

9

descriptive record of what images we're looking at for [Singley] to say what appears to be.

Certainly, the ultimate decision is the jury's. But I don't think there's any prejudice to . . . defendant in having [Singley] describe what appears to be a prepubescent male or female with an adult male or female or whatever the description is.

Under these unique circumstances, we discern no basis for disturbing the judge's evidentiary ruling. In his testimony, Singley only told the jury what he believed the videos and images appeared to show. He did not proffer his opinion as to what the jurors should ultimately conclude regarding defendant's guilt or innocence. As the judge pointed out, the children in the images were extremely young and could not be confused with adults. See State v. Gerena, ___ N.J. ___ (2021) (slip op. at 5) (noting that eyewitness testimony estimating the age of children who were "significantly younger in their developmental age than the . . . age threshold for [the offense in question] . . . was not problematic."). Indeed, defendant never argued to the jury that the individuals in these materials were over the age of eighteen. Instead, defendant asserted that because he shared the house with his three brothers and their father, there was a reasonable

doubt as to whether he, rather than one of the other occupants, downloaded or shared the child pornography.[7]

The judge also carefully instructed the jury in her final charge that it had the duty to determine the credibility of all of the witnesses, including Singley. Each juror was free to determine whether Singley's description of a particular video or image accurately reflected what the juror saw on the display screen. Thus, even if we were to conclude the judge made a mistake in permitting Singley to testify concerning the exhibits, this error was clearly harmless beyond a reasonable doubt because it could not have led the jury to a verdict it might not have otherwise reached. See State v. Baum, 224 N.J. 147, 159 (2016). Therefore, we reject defendant's contention that Singley's testimony deprived him of a fair trial.

## III.

Defendant next argues that the trial judge committed plain error by failing to give the jury a Hampton[8] and Kociolek charge concerning Passano's testimony about the oral statement defendant made to him at his house. We disagree.

_____

[7] In his summation, defense counsel told the jury, "Now the question that we have . . . after hearing the State's case is who downloaded the videos?"

[8] State v. Hampton, 61 N.J. 250 (1972).

Because defendant is raising this contention for the first time on appeal, he must establish plain error, that is, error that can lead had the jury to reach a decision it might otherwise not have made. R. 2:10-2. Defendant has failed to meet this standard.

In Hampton, the Supreme Court held that when a defendant's confession is admitted in evidence, the judge shall instruct the jurors "that they should decide whether . . . the defendant's confession is true[,]" and if they conclude that it is "not true, then they must . . . disregard it for purposes of discharging their function as fact finders . . . ." Hampton, 61 N.J. at 272. The Kociolek charge pertains to the reliability of an inculpatory statement made by a defendant to any witness. Kociolek, 23 N.J. at 421-23. As explained in Kociolek, the jury should be instructed to "'receive, weigh and consider such evidence with caution,' in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." Id. at 421.

Here, the judge gave the jury the Hampton charge concerning the "recorded statement" defendant made at police headquarters. However, this instruction did not specifically refer to the statement defendant earlier made to

Passano at his house. We are satisfied that the omission of this instruction does not require reversal.

Our Supreme Court has held that the failure to give a Hampton or Kociolek charge does not automatically constitute plain error. In State v. Harris, 156 N.J. 122, 183 (1998), the Court held that "the omission of [these] charges, in the context of the State's entire case against [the] defendant, was not clearly capable of producing an unjust result" because defense counsel tested the witness' credibility through a "devastating cross-examination . . . ." Similarly, in State v. Feaster, 156 N.J. 1, 72 (1998), the Court observed that "[t]he very purpose of a Hampton charge is to call the jury's attention to the possible unreliability of the alleged statements made by a criminal defendant." Because the defendant's attorney placed the witness "under a sustained attack during which his credibility was thoroughly challenged" on cross-examination, the Court held that the failure to give a Hampton instruction was not plain error. Ibid.

Although the judge did not give a Hampton or Kociolek charge about defendant's unrecorded statement to Passano, the judge gave this instruction concerning defendant's recorded statement at police headquarters. Defense counsel had the opportunity to cross-examine Passano and, in keeping with

defendant's overall strategy, got the detective to admit he could not ascertain "who was behind the computer at the time the images or files or videos were originally downloaded[.]" The judge also thoroughly instructed the jury regarding witness credibility at the beginning and close of the trial.

Just as importantly, defendant made the same admission about his brothers' lack of involvement in both of his statements. At his home, defendant told Passano "he came across child pornography accidentally" and "that his brothers weren't involved with it." At police headquarters, Passano asked defendant whether his three brothers were "into this stuff, child pornography?" Defendant replied, "No, . . . I told you -- I told you . . . ." As noted above, the judge provided the jury with the appropriate instruction for the statement defendant made at police headquarters. Because his prior statement at his house was virtually identical to his later admission, we are convinced the omission of an instruction for the first statement was harmless beyond a reasonable doubt.

IV.

Finally, defendant asserts that his sentence was excessive because the judge did not correctly apply the aggravating and mitigating factors in determining the range of the sentence and failed to properly consider all of the Yarbough factors in imposing consecutive prison terms. Again, we disagree.

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention[,]" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Id. at 65.

We are satisfied the judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record and applied the correct sentencing guidelines enunciated in the Code. The judge's decision to impose consecutive prison terms was also fully supported. Accordingly, we discern no basis to second-guess the sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3414-18