UNITED STATES of America,

v.

Jay MARCUS, Defendant.

No. 01–CR–289S–1 DRH.

United States District Court,
E.D. New York.

Jan. 6, 2003.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Central Islip, By Timothy S. Driscoll, A.U.S.A., for the Government.

Thomas F. Liotti, Esq., Garden City, for Defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Jay Marcus ("defendant" or "Marcus") pled guilty during trial to the knowing and intentional receipt, via computer, and concomitant possession of child pornography. The pleas were entered on June 20, 2002.

By letter dated November 11, 2002, defendant sought to withdraw his guilty pleas pursuant to Federal Rule of Criminal Procedure 32(e). The basis for the request is that the plea allocution purportedly did not comply with the requirements of Federal Rule of Criminal Procedure 11.

## BACKGROUND

### 1. Indictment

Defendant was charged in a three count superseding indictment with knowingly and intentionally (1) distributing in interstate commerce, by computer, child pornography; (2) receiving in interstate commerce, by computer, child pornography; and (3) possessing material that contains images of child pornography that had been transported in interstate commerce by computer. The statutory provisions said to have been violated are 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B).

### 2. Trial

The trial began with jury selection on June 17, 2002, and then proceeded with the presentation of witnesses on June 19, 2002. On June 19, 2002, the government presented evidence that (1) the defendant was the

sole user of the screen name that had distributed the one image which is the subject of Count One of the indictment; (2) numerous images and video clips that had been recovered from the defendant's computer; and (3) the deliberate process involved in downloading those images onto defendant's computer from the Internet.

After the jury was released for the day on June 19th, the Court entertained defendant's motion, made pursuant to Federal Rule of Evidence 403, that the images received into evidence, or some of them, should not be shown to the jury. That motion was denied after the Court reviewed the images in question and considered the arguments of counsel. The next day, June 20, 2002, I was advised by defense counsel that the defendant wished to plead guilty pursuant to a plea agreement that had been negotiated between the government and the defense during the evening recess.

3. *Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002)*

In the interim between the return of the superseding indictment and defendant's guilty pleas, the Supreme Court in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), declared two definitional sections of the Child Pornography Prevention Act of 1996, viz., §§ 2256(8)(B) and 2256(8)(D), to be overbroad and thus unconstitutional. The effect of the holding in *Free Speech Coalition* was to narrow the federal ban on child pornography to pornographic images made using actual children as distinct from "virtual child pornography," i.e., images that appear to depict minors engaged in sexually explicit conduct but which were created without using real children, such as by the use of youthful-looking adults or computer-imaging technology.

4. *Guilty Plea*

The plea agreement called for the defendant to plead guilty to receiving and possessing child pornography as alleged in the superceding indictment, with the distribution charge to be dismissed at sentencing.

Reference to the transcript of the plea of June 20, 2002, indicates: (1) that the Court explained the elements of Count Two (the receiving count) and Count Three (the possession count) to the defendant, including that "the government would be required to prove beyond a reasonable doubt, to the satisfaction of the jury, that the child depicted in one or more of these images was an actual child." (June 20, 2002 Tr. at 236 ["Tr."].) The Court expounded upon that element of the government's proof, by explaining to the defendant:

> As we know, technology has changed and it's possible to create, I am told, an image which would appear to be a child engaged in sexual activity, when in fact a child was not used to produce that particular image. And that apparently can be done through computers and advanced technology at this point.
>
> So the law as interpreted by the Supreme Court indicates that if a person possesses, receives or distributed what they call "virtual child pornography," that would not be a violation of the statute. And "virtual" means images which were not produced via the use of actual children, so they do not depict actual children. And that would be part of the government's burden.

*Id.* at 236–37, 122 S.Ct. 1389.

The Court returned to the same subject moments later, again advising defendant that the government would be required "to show that the images involved were not artificially created through technology but rather ... depicted actual children in explicit sexual conduct." *Id.* at 238, 122

S.Ct. 1389. That reiteration was followed by the question as to whether defendant had discussed that element of the government's proof with his attorney. To that inquiry the defendant answered "yes," as he did to the follow up question as to whether he "understood the nature of the government's proof and what they would be required to prove specifically if the case proceeded." *Id.*

Later, the government explained how it intended to prove that the subject images depicted real children thusly:

> With respect to whether the persons depicted in the picture were actually children, the government intends to prove that in two ways. One, the government was prepared to introduce the testimony of law enforcement witnesses that the persons depicted in the images were actually met by that law enforcement officer, and the law enforcement officer would then confirm that the image depicts an actual child, and the officer would be prepared to testify about how he recognized that child.
>
> With respect to a number of the remaining images, there were witnesses as well as law enforcement officers testifying with— that these images were the same images in magazines depicting child pornography, which magazines were produced in the mid 1970s.
>
> The government was then prepared to prove that the technology that essentially created an image from scratch was not available in the 1970s.

*Id.* at 254, 122 S.Ct. 1389.

Thereafter, the defendant began his allocution by indicating that he received "por-

nography knowingly and intentionally" on his computer within the time frame alleged in the indictment. *Id.* at 256, 122 S.Ct. 1389. The government noted that he had not referred to "child pornography." At that juncture the following colloquy occurred:

> THE COURT: Did you discuss with your attorney the meaning of child pornography within the meaning of this context?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The items that you referred to that were on your computer, they were child pornography?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, at least one of the images involved a youngster under 12 years of age.
>
> MR. LIOTTI: Judge, if I may, he doesn't know that for certain, but he's relying on the government's proffer in that regard.[1]
>
> .    .    .    .    .
>
> THE COURT: That would be true of the other type of conduct which is described, the 4–point enhancement.
>
> THE DEFENDANT: Yes, sir.[2]

*Id.* at 257–58, 122 S.Ct. 1389.

**5.  *Motion to Withdraw Plea***

As noted, defendant entered his pleas of guilty on June 20, 2002. At that time the

---

**1.** This inquiry, and response, pertain to a sentencing enhancement of two levels, pursuant to U.S.S.G. 2G2.2(b)(1), for materials depicting children under the age of twelve. *See* Tr. at 255 (referring to plea agreement). Parenthetically, one of the items retrieved from defendant's computer was an image of a male

toddler receiving oral sex from an adult female.

**2.** This inquiry, and response, pertain to an enhancement under Guideline 2G2.2(b)(3) for materials depicting children under the age of twelve involved in sadistic, masochistic or

sentencing date was set for October 4, 2002. That date was later changed to October 25, 2002 at defense counsel's request.

On October 25, 2002, the Court was ready to proceed to sentence and asked the government and defense whether they were ready. The government answered in the affirmative. Defense counsel, however, answered that the defendant was not ready to proceed because consideration was being given to making a motion to withdraw his June 20, 2002 pleas of guilty. The Court provided defense counsel with time to reflect on the matter and, by letter from Mr. Liotti dated November 11, 2002, defendant made the present motion. The basis for the motion is as follows:

> The Government's proof in this case, as proffered, revealed that they had law enforcement officials from England who allegedly investigated child pornography cases one-quarter century ago. In doing so, apparently these law enforcement personnel were prepared to come forward and indicate that when the photographs or videos were made, they were made of children at that time. However, there is a quantum leap which neither the defendant nor defense counsel can make with respect to knowledge and scienter concerning these children. The defendant does not know of his own knowledge whether these are actual photographs or when they were taken or whether they were taken of children.
>
> Accordingly, the defendant's plea fails to satisfy the elements of a plea allocution in that he hesitated in expressing knowledge or intent regarding the possession of child pornography. I am attaching a copy of the defendant's plea minutes of June 20, 2002. The defendant was left to rely entirely upon the Government's proffer as to whether the

images were in the nature of child pornography.

> The defendant has also reviewed the Presentence Investigation Report and finds that Probations's view of this case is at odds with the defendant's statements during his plea and totally ignores the plea minutes. In addition, the defendant is apprised of other cases within this courthouse where defendants for the same or greater offenses, have been afforded more favorable treatment. *See* Robert E. Kessler, *Medford Man Convicted of Child Porn Charges,* Newsday, September 24, 2002 at A46.

. . . . .

> This Court should be well aware that Mr. Marcus was adamant about his innocence and the Government's and America On Line's misconduct in this case and other cases like it. Mr. Marcus is not in the business of pornography. As this Court knows, the defendant's plea was entered after this Court made an evidentiary ruling, allowing for the admission of a video of what appeared to be a young girl with ejaculate on her face and committing the act of fellatio. It was reasoned at the time that while the defendant was not familiar with this image and was not certain of whether it was that of a child, nonetheless his concern was that a jury in viewing that video would absolutely have to convict him, notwithstanding the enormous free speech and freedom of association issues which apply in this case. (Tr. 257.)

(Thomas F. Liotti, Esq. Nov. 11, 2002 Letter at 1–2.)

With respect to the comment in the November 11, 2002 letter that defendant "hesitated in expressing knowledge or intent regarding the possession of child por-

---

other depictions of violence. *See* Tr. at 255

(referring to plea agreement).

nography," the Court did not discern any hesitation in defendant's acknowledgment that he possessed images depicting child pornography. However, it is correct that defendant was not asked specifically whether he knew the images depicted real children, although he did acknowledge, after the post-*Free Speech Coalition* definition of child pornography was explained to him ad nauseam, that he knowingly and intentionally possessed such pornography as so defined.

With respect to "Mr. Marcus [being] adamant about his innocence," defendant has not submitted an affidavit in support of the present motion, nor has he otherwise directly communicated his state of mind to the Court beyond his initial "not guilty" pleas to Counts One, Two and Three and subsequent pleas of "guilty" to Counts Two and Three.

The resolution of the present motion turns on whether defendant made a knowing and voluntary acknowledgment of guilt on June 20, 2002. And central to that query is whether the fact that the "defendant was [purportedly] left to rely entirely upon the Government's proffer" that actual children appeared in the images retrieved from his computer invalidates his pleas. (Nov. 11, 2002 Letter at 2.)

## DISCUSSION

### 1. Purpose of Plea

Rule 11 is "'designed to insure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *United States v. Showerman*, 68 F.3d 1524, 1527 (2d Cir.1995)(quoting *United States v. Renaud*, 999 F.2d 622, 624 (2d Cir.1993)); *see also North Car-*

*olina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)("The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.").

### 2. Withdrawal of Plea

As explained by the Second Circuit in *United States v. Grimes:*

Rule 32(e) of the Fed.R.Crim.P. indicates that a court may permit withdrawal of a guilty plea "if the defendant shows any fair and just reason for doing so." Still, "[a] defendant has no absolute right to withdraw his plea of guilty." *United States v. Williams*, 23 F.3d 629, 634 (2d Cir.1994), *cert. denied*, 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994). "The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea."[3] *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992). "In determining whether a 'fair and just reason' exists to justify withdrawal of a guilty plea, a district court should consider: (1) the time lapse between the plea and the motion; and (2) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) (citations omitted). The defendant bears the burden of showing that there are valid grounds for permitted withdrawal. *United States v. Rodriguez*, 968 F.2d 130, 141 (2d Cir.), *cert. denied*, 506 U.S. 847, 113 S.Ct. 140, 121 L.Ed.2d 92 (1992).

225 F.3d 254, 259 (2d Cir.2000). *See also United States v. Fernandez–Antonia*, 278

---

**3.** The government estimated the guideline range of imprisonment as "46 to 57 months," (Tr. at 242), whereas the PSR sets the range

at "97 to 121 months" (PSR at 19, ¶ 80). Perhaps this disparity triggered the present motion.

F.3d 150, 155 (2d Cir.2002); *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997).

3. **Defendant's Pleas of Guilty Were the Product of a Voluntary and Intelligent Choice Among the *Alternative Courses of Action Open to Him***

Defendant's pleas of guilty were entered voluntarily. (Tr. at 233.) The question is whether he made an "intelligent choice among the alternative courses of action open to [him]." *United States v. Renaud,* 999 F.2d at 624. To do so, he needed, inter alia, to understand what the government would have had to prove during the then ongoing trial for him to be convicted. It is clear from the plea minutes, and from my observations during the plea allocution, that he had such knowledge.

The Court read Counts Two and Three to the defendant verbatim, those being the counts to which the defendant entered guilty pleas. (Tr. at 234.) That was followed by the Court reading the relevant portions of Section 2252A, including the requirement that a defendant's possession or receipt must be knowing and intentional. *Id.* at 234–35, 122 S.Ct. 1389. It was explained to defendant that the government would be required to prove that the "conduct was knowingly done and was not the result of some type of accident or mistake." *Id.* at 236, 122 S.Ct. 1389. That was immediately followed by a lengthy explanation of the distinction between child pornography involving the use of actual children, and virtual pornography, (Tr. 236–37), supplemented by an underscoring that the receipt, possession, or distribution of virtual child pornography was not a violation of Section 2252A. *Id.* at 237, 122 S.Ct. 1389.

After having been furnished by the Court with the post-*Free Speech Coalition* definition of what constituted child pornography, and advised that the government would be required to show that he know-

ingly possessed and received at least one item falling within that definition, (*id.* at 237–38, 122 S.Ct. 1389), the defendant was asked whether he understood the nature of the government's burden and whether he had discussed that subject with his attorney. To both inquiries he answered in the affirmative. Thereafter, he entered guilty pleas to Counts Two and Three. (Tr. at 252–253.)

Before defendant's plea was accepted, the government, at the Court's request, detailed the nature of its proof against defendant. (Tr. at 253–254.) That was followed by the defendant explaining his conduct. In doing so, he indicated that he "received pornography knowingly and intentionally." (Tr. at 256.) He further explained that included within the items received and possessed were items of child pornography. (Tr. at 257.) The child pornography statement by the defendant was immediately preceded by the following colloquy, noted earlier, to wit:

THE COURT: The charge here is child pornography. Did you discuss this with your attorney the meaning of child pornography within the meaning of this context [i.e., the post-*Free Speech Coalition* context that the Court had already explained to him at length]?.

THE DEFENDANT: Yes.

THE COURT: Do you understand it?

THE DEFENDANT: Yes.

THE COURT: The items that you referred to that were on your computer were they child pornography?

THE DEFENDANT: Yes.

*Id.* at 257, 122 S.Ct. 1389.

Defendant plead guilty on the second day of trial. At that time, the alternative courses of action open to him were clear: he could permit the trial to continue, or he could accept the plea offer, thus ending the matter. He opted for the latter alternative.

Absent from defense counsel's letter motion is any suggestion that defendant did not fully understand that child pornography did not include virtual child pornography and that part of the government's burden of proof was to establish that he knowingly and intentionally received and possessed images of actual children engaged in sexually explicit conduct. Rather the gravamen of defendant's claim—as, again, voiced solely in his attorney's previously quoted November 11, 2002 letter motion—is that the defendant did "not know of his own knowledge whether these were actual photographs or when they were taken or whether they taken of children." Instead, defense counsel maintains, defendant "was left to rely entirely upon the government's proffer as to whether the images were in the nature of child pornography." For present purposes, the Court assumes the accuracy of those statements.

Defendant offers no authority for the implicit proposition that defendant's pleas of guilty, although voluntary and representing an intelligent choice among alternative courses of action, are invalidated under such circumstances. Given that Rule 11 provides that a "defendant may plead guilty, not guilty or *nolo contendere*," it is not surprising that no authority has been furnished on this point. *Id.* (emphases added); *cf. North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and *Thomas v. Roach,* 165 F.3d 137, 144 (2d Cir.1999). Which is to say, even if defendant, as distinct from his attorney, were now to claim that he merely conceded that one or more of the image taken from his computer depicted *actual* children engaged in sexually explicit conduct, that would not warrant the relief requested. Surely, if an accused may enter a *nolo contendere* plea to a charge, the same plea may be entered as to an element of a charge. And that is so even if the label "*nolo contendere*" was not attached

to the subject response. *Alford,* 400 U.S. at 37, 91 S.Ct. 160 ("The fact that his plea was denominated a plea of guilty rather than a plea of *nolo contendere* is of no constitutional significance ....").

Granted, an individual who simply possesses or receives images of children engaged in sexually explicit conduct may not even consider, much less know, whether the images depict actual children or are the product of computer technology; indeed, such nuances as to origin seemingly would be irrelevant to the viewer if the two types of presentation are, or become as technology improves, indistinguishable. And yes, the government's burden to demonstrate that a defendant, such as Marcus, knowingly received and possessed child pornography is certainly more formidable than if an accused, *e.g.,* produced the child pornography in question. Nonetheless, this defendant was aware of what constituted "child pornography," and what did not, under *Free Speech Coalition.* He made a voluntary and knowing decision on June 20, 2002 to plead guilty to Counts Two and Three. Moreover, the requirement of Rule 11(f) has been satisfied in that there is a more than adequate factual basis for the pleas. *See generally United States v. Andrades,* 169 F.3d 131, 136 (2d Cir.1999).

At this juncture the Court will briefly discuss the two other factors which bear on a Rule 32(e) application to withdraw a plea, viz., the time lapse between the pleas and motion and whether the government would be prejudiced by the withdrawal of the pleas.

**4. Time Lapse Between Pleas and Motion, and Prejudice *to Government Should Relief Requested be Granted***

The pleas were taken on June 20, 2002. Nothing was said to the Court nor the government to indicate that the defendant was considering making an application to

withdraw those pleas until the case was called for sentence on October 25, 2002, i.e., over 4 months later. Moreover, and more importantly, the decision to plead guilty occurred during the course of the trial. As noted in *United States v. Maher*:

[T]he court must draw all permissible inferences in favor of the government and against the defendant, especially when, as here, the defendant has gone to trial, heard most of the government's evidence, and then pleaded guilty, describing his wrongdoing and acknowledging that he could not effectively defend against that evidence.

108 F.3d 1513, 1530 (2d Cir.1997).

Significant prejudice would be incurred by the government should the requested relief be granted. Not only has the defendant been the beneficiary of a "dry run" concerning major portions of the government's case, but the government would be required to reassemble its witnesses—including some from foreign locations—if the pleas were vacated and a second trial commenced.

### 5. *Conclusion Re Application to Withdraw Pleas*

In sum, defendant's pleas of June 20, 2002 were voluntary, and represented an intelligent and knowing choice among the alternatives with which he was then faced. Additionally, the unexplained, protracted hiatus between the taking of the pleas and the application to withdraw those pleas, and the prejudice to the government should the pleas be withdrawn, both counsel against granting the requested relief.

For the reasons indicated, defendant's motion to withdraw his pleas to Counts Two and Three of the indictment is denied.[4]

### 6. Defendant Will be Sentenced on *February 14, 2003 at 12:00 p.m.*

Any objections to the presentence report, with supporting authority, should be provided to the Court no later than ten days prior to the sentencing date.

The plea agreement precludes defendant from seeking a downward departure. However, the Court, sua sponte and for its own edification, directs defendant to explore whether a basis for such a departure exists. In that regard, the defense has already provided the Court with a document entitled "Able Assessment Test," which purports to show that defendant does not represent a risk to children. Possibly that information, and/or other information, may serve as an appropriate predicate for a downward departure application.[5] *See generally United States of America v. Silleg*, 311 F.3d 557 (2d Cir. 2002).

SO ORDERED.

---

4. In reaching the above decision, the Court has considered *United States v. Reilly*, No. 01–CR–1114, 2002 WL 31307170 (S.D.N.Y. Oct. 15, 2002), cited by the defense. Reilly allocuted "before the Court had read the Free Speech decision." *Id.* at *1. As a result, the Court in *Reilly* neglected to explain to the defendant that the statutory prohibition against child pornography did not extend to virtual pornography. That deficiency was not cured by the government or defense attorney, both of whom remained silent on the subject. Therefore, Reilly—unlike Marcus—pled guilty to the pre *Free Speech Coalition* unpruned definition of child pornography under 18 U.S.C. § 2256A. Moreover, in *Reilly*, unlike here, no prejudice to the government resulted from the withdrawal of the plea, and four weeks, rather than four months, separated the plea and the motion to withdraw that plea.

5. The above is not meant to imply that if such a ground is found to exist, the Court will necessarily downwardly depart.