**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3439-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER R. HAAS,

    Defendant-Appellant.

_____

> Submitted February 5, 2019 – Decided July 3, 2019
>
> Before Judges Rothstadt and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-02-0206.
>
> Albert P. Mollo, attorney for appellant.
>
> Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Christopher R. Haas appeals from his convictions, after a non-jury trial in the Law Division, for driving while intoxicated (DWI), N.J.S.A. 39:4-50; possession of a controlled dangerous substance (CDS) in a car, N.J.S.A. 39:4-49.1; reckless driving, N.J.S.A. 39:4-96; careless driving, N.J.S.A 39:4-97; and failure to maintain a lane, N.J.S.A. 39:4-88(b). The court sentenced defendant to a 180-day custodial jail term, suspended his driving privileges for twelve years, and imposed applicable fines and costs.

Defendant raises the following points on appeal:

> POINT I
> APPELLANT WAS DENIED A SPEEDY TRIAL.
>
> POINT II
> APPELLANT WAS SUBJECTED TO DOUBLE JEOPARDY.
>
> POINT III
> THE CRIMINAL AND MOTOR VEHICLE CHARGES SHOULD HAVE BEEN JOINED FOR TRIAL.
>
> POINT IV
> THE MOTOR VEHICLE OFFENSES SHOULD HAVE BEEN REMANDED TO MUNICIPAL COURT.
>
> POINT V
> APPELLANT IS NOT GUILTY OF DRIVING UNDER THE INFLUENCE OF DRUGS AS A MATTER OF LAW.

POINT VI
APPELLANT IS NOT GUILTY OF RECKLESS DRIVING AS A MATTER OF LAW.

POINT VII
APPELLANT IS NOT GUILTY OF CARELESS DRIVING AS A MATTER OF LAW.

POINT VIII
APPELLANT IS NOT GUILTY OF FAILURE TO MAINTAIN LANE AS A MATTER OF LAW.

POINT IX
APPELLANT IS NOT GUILTY OF POSSESSION OF CDS IN A MOTOR VEHICLE AS A MATTER OF LAW.

After reviewing the record in light of the contentions on appeal and the applicable law, we reject defendant's speedy trial and double jeopardy arguments, and further conclude that all of defendant's convictions are supported by sufficient, credible evidence in the trial record, with the exception of defendant's conviction for possession of a CDS in a car. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

We discuss with greater detail than typical the case's procedural history as it is relevant to the issues raised on appeal. On August 8, 2014, just after

A-3439-16T4

midnight, R.G.[1] was driving behind defendant on a one-lane road in Monroe Township when he saw defendant repeatedly swerving back and forth across the double-yellow line. R.G. passed defendant and while waiting at a traffic light approximately a quarter-mile down the road, "heard a boom," and "saw [a] flash." He called 911 shortly thereafter and returned to the scene where he observed that defendant had driven his vehicle into a utility pole, causing the power lines to fall.

Monroe Township Police Officer Daniel Mosakowski, an eight-year veteran of the Monroe Township Police Department, responded to the scene. At trial, Mosakowski testified that he was certified to conduct field sobriety tests and had made between fifty and seventy DWI arrests over the course of his fifteen-year career. Mosakowski stated that when he arrived on the scene, he observed defendant's car in the woods. He contacted emergency medical personnel, who evaluated defendant and noted he had minor abrasions on his forearm and forehead.

During Mosakowski's on-scene investigation, he spoke with defendant and observed that he had a slurred and slow speech pattern, was staggering and swaying, and his hand and feet movements were uncoordinated. Mosakowski

---

[1] We use initials to protect the privacy of the witness.

A-3439-16T4

conducted three field sobriety tests – the Horizontal Gaze Nystagmus (HGN), the walk-and-turn, and the one-leg-stand – all recorded by the motor-vehicle recorder (MVR) in his police vehicle.

During the HGN test, defendant closed his eyes, failed to follow instructions, and according to Mosakowski, appeared to fall asleep. While performing the walk-and-turn test, defendant was unable to stand and stay in the starting position, and during the one-leg-stand test, he repeatedly failed to maintain his balance, requiring him to "keep putting his foot down." Defendant admitted to Mosakowski that he had ingested more than the recommended dose of Sudafed.

After defendant failed to complete satisfactorily any of the field sobriety tests, he was arrested for DWI. An officer searched defendant and recovered a container attached to defendant's key chain that held two yellow pills. Mosakowski testified that he and another officer noticed that the pills were marked with a "10 and 36" on one side and what "look[ed] like a V" on the other side. After the court overruled defendant's counsel's hearsay objection, Mosakowski testified that they inputted the identifying information in a "pill identifier" program, which revealed that the pills were Vicodin – a combination of acetaminophen and hydrocodone.

Defendant was subsequently transported to the police station and administered a breathalyzer test which indicated his blood alcohol concentration (BAC) was 0.00%. Shortly thereafter, Freehold Township Officer Andrew Galaydick, a certified drug recognition officer, who testified to participating in over one hundred arrests of intoxicated drivers, and performing over thirty drug recognition evaluations, examined defendant.

During Galaydick's evaluation, which was conducted three hours after defendant's arrest, he noted defendant's coordination remained poor, his speech was slurred, and he was still not able to complete the walk-and-turn test, the one-leg-stand test, and the finger-to-nose test. He also stated that defendant swayed, had a pulse of 68, which he described as toward the low end. Galaydick testified that defendant had a blood pressure reading of 136/74, which reflected a low diastolic number and high systolic number. Finally, Galaydick stated he observed defendant's reaction to the direct-light evaluation was "slow," and that he noticed "a white pasty residue" on his tongue, which he testified was indicative of drug ingestion.

Based on his evaluation, combined with his experience and training, Galaydick concluded defendant was impaired. He attributed defendant's impairment to the ingestion of two categories of narcotics: an analgesic and a

6

stimulant. He found defendant's symptoms characteristic of both types of drugs, and that he had ingested them prior to operating his car. As Galaydick testified, Sudafed, which defendant admitted to ingesting, is classified as a central nervous system stimulant, and hydrocodone, a narcotic analgesic.

Defendant was arrested and issued summonses for the motor vehicle offenses listed above, along with driving while his license was suspended, N.J.S.A. 39:3-40, failure to install an ignition-interlock device, N.J.S.A. 39:4-50.19(a), and third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1). In addition, on February 17, 2015, a grand jury indicted defendant with one count of fourth-degree operating a motor vehicle during a license suspension for a second or subsequent DWI conviction, N.J.S.A. 2C:40-26(b) (indictable offense).

On April 17, 2015, defendant's counsel requested discovery from the State. In the State's May 20, 2015 response, it provided responsive documents and advised that many of defendant's requests sought information that did not exist, or the State had no obligation to provide. The next day the parties appeared for a status conference. Defendant's counsel acknowledged he received the State's correspondence but maintained he still "need[ed] more discovery." The prosecutor represented that she provided the documents in the

State's possession, and all of counsel's remaining requests were either inapplicable, or the requested discovery did not exist.

During the May 21, 2015 conference, defendant's counsel stated he "want[ed] this case done," as defendant has "been waiting since last August for this case to be done," and "want[ed] a trial." In response to defendant's request, the court explained that the DWI charge would be severed from the indictable offense. Counsel then expressed an intention to file a motion to dismiss the indictment based on "improper instructions given to the grand jury as to . . . the state of culpability for [the indictable] offense." The court ordered the motion to be filed no later than July 10, 2015, and scheduled a return date for August 11, 2015, with a trial on the indictable offense to commence on August 31, 2015.

Despite the court's direction, defendant did not file his dismissal motion until July 24, 2015, two weeks after the court-ordered date and sought an adjournment of the scheduled August 11, 2015 hearing date. The court granted counsel's request, and on September 1, 2015, heard oral arguments, denied defendant's application, and rescheduled trial on the indictable offense for December 8, 2015.

The court presided over a jury trial with respect to the indictable offense on December 11 and 14, 2015, and defendant was found guilty on December 14,

2015. On December 29, 2015, defendant retained new counsel. On February 11, 2016, the court sentenced defendant to a 364-day jail term with a 180-day period of parole ineligibility.

On October 26, 2016, the court issued an order requiring defendant to file all motions to dismiss the remaining motor-vehicle charges on or before November 30, 2016. On November 23, 2016, defendant filed a dismissal motion, but did not file a supporting brief until December 30, 2016. Defendant's motion to dismiss was based on the alleged violation of his right to a speedy trial, and his claim that a second trial would violate his right against double jeopardy. The court heard oral arguments on January 24, 2017 and denied the motion the same day.[2] The court also scheduled trial for the motor vehicle charges for February 22, 2017. Thereafter, on February 1, 2017, the State sought an adjournment of the scheduled February 22, 2017 trial date because its drug recognition expert was unavailable as a result of the birth of his child.

On March 1, 2017, the parties appeared for trial. Prior to hearing testimony, the court explained its reasons for denying defendant's motion to dismiss based on double jeopardy and speedy trial grounds. With respect to defendant's double jeopardy claim, the court stated that it disagreed with

---

[2] Defendant has not provided a transcript of the January 24, 2017 hearing.

A-3439-16T4

defendant's argument that the State was barred from prosecuting him on the DWI charge after its successful prosecution of the indictable offense. The court concluded that operating a motor vehicle during a period of license suspension for a second or subsequent DWI conviction, and the DWI charge, are not the same offenses, nor are they lesser-included offenses of each other. The court further explained that the two charges seek "to punish two separate offenses and vindicate two separate interests[,] [and that] [t]he fact that each offense requires the operation of a motor vehicle is not sufficient to invoke double jeopardy."

With respect to defendant's claim that his right to a speedy trial was violated, the court emphasized that "the bulk of the reasons [for any delay] can be laid at the feet of [defendant's first counsel]." The court explained that counsel failed to file a dismissal motion until July 23, 2015, despite being ordered to do so by July 10, 2015. Further, the hearing on defendant's July 23, 2015 dismissal motion was adjourned from August 11, 2015, due to counsel's vacation plans. The court also explained that counsel made repeated claims for discovery but failed to "precisely and concisely identify what exactly he was entitled to and was missing."

In addition, the court noted that once defendant retained new counsel after the December 2015 trial, the court heard a motion to suppress on June 24, 2016,

and granted the application on August 16, 2016. And, despite the court requiring defendant to file his motion to dismiss by November 30, 2016, defendant did not file his brief until December 30, 2016. The court explained that it heard oral arguments on January 24, 2017, and denied the motion that day. The court acknowledged that it granted a twenty-eight-day adjournment on February 1, 2017 due to the unavailability of the State's drug recognition expert due to the birth of his child, but concluded that brief delay did not violate defendant's right to a speedy trial.

The court concluded that defendant was not "unfairly prejudiced by these delays," noting that evidence was not lost, witnesses remained available, and that nothing changed in the circumstances underpinning the DWI prosecution. Finally the court explained that defendant did not file a formal motion for a speedy trial until November 2016.

At the conclusion of trial, the court determined defendant was guilty of DWI, possession of a CDS in a car, reckless driving, careless driving, and failure to maintain a lane. The court dismissed the possession of CDS and failure to install an ignition-interlock device offenses, as the State failed to prove these violations. Additionally, the court noted that defendant's driving while his license was suspended offense "is a lesser-included charge of [the indictable

offense], . . . that [defendant] has already been found guilty of and has already served his sentence . . . ."

In concluding the State established defendant's guilt beyond a reasonable doubt on the reckless driving, careless driving, and failure to maintain a lane charges, the court found R.G.'s testimony to be credible. With respect to defendant's possession of CDS in a car, the court found that "[t]estimony clearly established that [defendant] had Vicodin pills in a fob attached to his keys." The court explained that "[a]lthough the drugs were not chemically tested, the drugs were readily identifiable based on their color, shape, and markings." Finally, in finding defendant guilty of DWI, the court relied on Galaydick's credible testimony, among other evidence, and, relying on State v. Tamburro, 68 N.J. 414, 421 (1975), stated that "[a] conviction can be based on the qualified expert's determination based on the subject's conduct, physical and mental condition, and symptoms displayed."

II.

In defendant's first point on appeal, he maintains that the trial court violated his right to a speedy trial warranting dismissal of the motor vehicle charges. We disagree.

It is well-settled that "[t]he right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process Clause of the Fourteenth Amendment." State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)). "The constitutional right . . . attaches upon defendant's arrest." Ibid. (alteration in the original) (quoting State v. Fulford, 349 N.J. Super. 183, 190 (App. Div. 2002)). Since it is the State's duty to promptly bring a case to trial, "[a]s a matter of fundamental fairness," the State must avoid "excessive delay in completing a prosecution," or risk violating "defendant's constitutional right to speedy trial." Ibid.

The four-part test to determine if a defendant's speedy-trial right has been violated was announced in Barker v. Wingo, 407 U.S. 514, 530-33 (1972) and adopted by our Supreme Court in State v. Szima, 70 N.J. 196, 200-01 (1976). The test requires "[c]ourts [to] consider and balance the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" Tsetsekas, 411 N.J. Super. at 8 (quoting Barker, 407 U.S. at 530). "No single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Id. at 10 (citing Barker, 407 U.S. at 533). Courts are required to analyze each interrelated factor "in light of the

13

relevant circumstances of each particular case." Ibid. We will not overturn a trial judge's decision whether a defendant was deprived of due process on speedy-trial grounds unless the judge's ruling was clearly erroneous. State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977).

With respect to the first factor, we note that our judiciary "is, as a matter of policy, committed to the quick and thorough resolution of DWI cases." Tsetsekas, 411 N.J. Super. at 11 (quoting State v. Farrell, 320 N.J. Super. 425, 446 (App. Div. 1999)). Although this matter neither originated, nor resolved, in the municipal court, we nevertheless acknowledge that "[i]n 1984, Chief Justice Wilentz issued a directive, later echoed in Municipal Court Bulletin letters from the Administrative Office of the Courts, that municipal courts should attempt to dispose of DWI cases within sixty days." Ibid. (quoting Farrell, 320 N.J. Super. at 446-47). We have not, however, suggested that "any delay beyond the sixty-day goal is excessive," and declined to apply a bright-line test as to when any delay is deemed excessive. See State v. Cahill, 213 N.J. 253, 270 (2013); Tsetsekas, 411 N.J. Super. at 11 ("There is no set length of time that fixes the point at which delay is excessive.").

"Barker's second factor examines the length of a delay in light of the culpability of the parties." Tsetsekas, 411 N.J. Super. at 12 (citing Barker, 407

14

U.S. at 531). "[D]ifferent weights should be assigned to different reasons" proffered to justify a delay. Barker, 407 U.S. at 531. Purposeful delay tactics weigh heavily against the State. Tsetsekas, 411 N.J. Super. at 12 (citing Barker, 407 U.S. at 531). "A more neutral reason[,] such as negligence or overcrowded courts[,] should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, 407 U.S. at 531. "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." Ibid. And, "[d]elay caused or requested by the defendant is not considered to weigh in favor of finding a speedy trial violation." Farrell, 320 N.J. Super. at 446.

With respect to the third factor, we recognize the assertion of a right to speedy trial by a defendant is not required, but should be given strong weight when balancing the factors. Fulford, 349 N.J. Super. at 195. We examine whether and how a defendant asserts the right to a speedy trial to determine whether the state has violated the right. Cahill, 213 N.J. at 258. In this regard, a defendant's assertion of the right to a speedy trial need not be "by way of formal motion." State v. Smith, 131 N.J. Super. 354, 363-64 (App. Div. 1974). We have also observed that a defendant's mere comment that he or she was

"'ready for trial' and 'wanted it to occur sooner rather than later'" were sufficient assertions of a defendant's speedy-trial right. State v. May, 362 N.J. Super. 572, 597 (App. Div. 2003). Finally, a court may also consider "the frequency and force of the [defendant's] objections" when assessing whether the defendant properly invoked the right. Barker, 407 U.S. at 529.

Finally, the fourth factor we consider is prejudice to a defendant caused by delay. "[P]roof of actual trial prejudice is not 'a necessary condition precedent to the vindication of the speedy trial guarantee.'" Tsetsekas, 411 N.J. Super. at 13-14 (quoting Merlino, 153 N.J. Super. at 15-16). Although the delay may not prejudice a "defendant's liberty interest or his ability to defend on the merits[,] . . . significant prejudice may also arise when the delay causes the loss of employment or other opportunities, humiliation, the anxiety in awaiting disposition of the pending charges, the drain in finances incurred for payment of counsel or expert witness fees and the 'other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances.'" Id. at 13 (quoting Farrell, 320 N.J. Super. at 452) (citing Fulford, 349 N.J. Super. at 195; State v. Dunns, 266 N.J. Super. 349, 380 (App. Div. 1993); Merlino, 153 N.J. Super. at 15-16). The impairment of an accused's

A-3439-16T4

defense is considered "the most serious since it [goes] to the question of fundamental fairness." Szima, 70 N.J. at 201.

Balancing the four Barker factors, that are "related factors to be considered with such other circumstances as may be relevant," Szima, 70 N.J. at 201, we do not find the court's denial of defendant's speedy-trial motion to be clearly erroneous. As to the first and second Barker factors, we first recognize that, on its face, the 936-day delay between defendant's arrest and the commencement of trial on his DWI and related motor vehicle offenses, appears inordinate. As the trial court noted, however, "[w]hile it [took] some time for th[e] case to reach the point of resolution, the bulk of the reasons can be laid at the feet of prior defense counsel." Further, as the trial court concluded, the delay from defendant's arrest to his motor vehicle trial was primarily "attributable [to defendant's counsel's] repeated requests for discovery the defendant was not entitled to[,] and [the] failure to . . . follow the court's briefing schedule." These factual findings are amply supported by the record. Finally, during this time period, the court decided, without objection, to resolve the indictable charge before the motor vehicle charges.

Additionally, the ninety-eight-day delay from defendant's November 23, 2016 formal request for a speedy trial to the March 1, 2017 trial was fully

justified. The court's adjournment of the February 22, 2017 trial date was validly explained by the unavailability of the State's drug recognition expert on the scheduled February 2017 trial date. Under these circumstances, we decline to weigh the first and second Barker factors in defendant's favor.

With respect to the third Barker factor, we note that defendant never brought a formal speedy trial motion with respect to the indictable offense. As noted, defendant only brought his speedy trial motion with respect to the motor vehicle charges on November 23, 2016, and the trial was conducted less than three and one-half months later.

Defendant claims, however, that his counsel's comments at the May 21, 2015 proceeding where he stated that "[defendant] has been waiting since last August for this case to be done," and that they "want[ed] a trial," invoked his speedy trial rights. After being advised, however, that the indictable offense and motor vehicle charges would be severed, defendant did not request a trial on the motor vehicle charges until November 2016. To the extent defendant's May 21, 2015 comments asserted his right to a speedy trial on all the outstanding charges, and not simply the indictable offense, we note that immediately after making those comments, he requested additional discovery from the State.

18

Accordingly, it is clear that defendant was not prepared to try either the indictable offense or motor vehicle charges at that time.

Finally, as to the fourth Barker factor, we find that except for pre-verdict anxiety, stress and personal inconvenience, and the cost of air travel and transportation caused by the adjournment, the lack of significant prejudice suffered by defendant militates against dismissal of this case. As the court recognized, defendant was not subject to pretrial incarceration and his defense was "absolutely not" impaired. Accordingly, measured against the four Barker factors, we conclude there was no violation of defendant's constitutional speedy-trial right.

Defendant's reliance on Cahill to support his contention that his right to a speedy trial was violated is misplaced, as the facts in Cahill are distinguishable. In Cahill, the defendant was arrested for DWI and charged with various motor vehicle violations. Cahill, 213 N.J. at 257. A few months later, a grand jury indicted the defendant with assault by auto, and the defendant pled guilty. Ibid. The defendant's motor vehicle charges were subsequently remanded to municipal court. Id. at 259. Sixteen months after the defendant was sentenced for the indictable offense, he received a trial notice for his motor vehicle

charges. Ibid. The scheduled trial date was twenty-nine months after his arrest. Ibid.

The Cahill court conducted the four-part Barker test and concluded that the defendant's right to a speedy trial was violated by the twenty-nine-month delay between his arrest and his trial. Cahill, 213 N.J. at 275. In balancing the Barker factors, the Court noted that "the State offer[ed] no justification for the delay," such as "a conflict of interest requiring recusal of the judge." Id. at 273. Further, the Court noted that "[a]ll necessary witnesses were available." Id. at 273.

In Cahill, defendant's actions did not cause any delay. Here, however, as the court concluded, defendant's counsel's discovery requests and failure to follow the briefing schedule contributed to the delay in resolution of the motor vehicle charges. Once defendant formally asserted his right to a speedy trial, the court concluded the trial less than three and one-half months later. Additionally, as noted, the brief delay caused by the February 22, 2017 adjournment was a result of the expert witness's unavailability, and was entirely justified. Accordingly, Cahill does not support defendant's assertion that he was denied a speedy trial.

## III.

We also disagree with defendant's second point on appeal, that his second trial for his motor vehicle charges subjected him to double jeopardy. Specifically, defendant contends that his indictable offense and DWI charge involve a common statutory element and were proven by "much of the same evidence." We reject this argument because the act of driving with a suspended license is not the same offense as defendant's DWI conviction, and the same evidence used to establish defendant's indictable offense was not necessary to prove his DWI charge.

The Fifth Amendment's double jeopardy clause "provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" State v. Miles, 229 N.J. 83, 92 (2017) (quoting U.S. Const. amend. V). Similarly, under the New Jersey Constitution, "No person shall, after acquittal, be tried for the same offense." N.J. Const. art. I, ¶ 11; see Miles, 229 N.J. at 92 ("This Court has consistently interpreted the State Constitution's double-jeopardy protection as coextensive with the guarantee of the federal Constitution."). The double jeopardy clause "protects against (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same

21

offense.'" Miles, 229 N.J. at 92 (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). "Common to all three protections is the concept of 'same offense.'" Ibid. Thus, courts evaluating a double jeopardy claim must ask "whether the second prosecution is for the same offense involved in the first." Id. at 93 (quoting State v. Yoskowitz, 116 N.J. 679, 689 (1989)).

"Double jeopardy analysis involves consideration of one of two prongs: (1) the 'same offense' test, which focuses upon the statutory elements of a crime rather than proofs proffered for conviction; or (2), alternatively, the 'same evidence' test, which focuses upon whether the same evidence used to prove the first offense is necessary to prove the second offense." State v. Hand, 416 N.J. Super. 622, 627 (App. Div. 2010) (citing State v. De Luca, 108 N.J. 98, 107 (1987)).[3]

N.J.S.A. 2C:40-26(b) states that it "shall be a crime of the fourth-degree to operate a motor vehicle during the period of license suspension . . . ." The

---

[3] In Miles, our Supreme Court followed the United States Supreme Court's elimination of the "same evidence" test in United States v. Dixon, 509 U.S. 688 (1993), and adopted the "same elements" test as the "sole double jeopardy analysis." Miles, 229 N.J. at 96. However, the "new singular same elements standard" applies "prospectively to offenses committed after the date of th[e] [Miles] opinion." Id. at 99. Accordingly, as defendant was arrested in August 2014, we use both the "same elements" test and the "same evidence" test in our analysis of defendant's double jeopardy claim.

plain wording of the statute establishes its intent to impose penalties for the act of driving with a suspended license. It is not the prior DWI convictions that are being revisited or enhanced with an additional penalty. Instead, the Legislature has mandated that when a person with more than two DWI convictions drives a vehicle while his or her license is suspended, that new and separate act of driving with a suspended license is a fourth-degree crime subject to penalties. As we have previously recognized, the violation of N.J.S.A. 2C:40-26(b) constitutes a new and separate crime from the predicate DWI convictions. See State v. Carrigan, 428 N.J. Super. 609, 620-21 (App. Div. 2012) (holding that a conviction under N.J.S.A. 2C:40-26(b) does not violate ex post facto constitutional principles). Accordingly, there is no double jeopardy violation under the "same elements" test.

Additionally, we do not find a double jeopardy violation based on the "same evidence" test. We first note that defendant has failed to provide a transcript of the trial on the indictable offense. We nevertheless note that the only proofs necessary for the State to establish defendant's guilt on the indictable offense was that defendant was driving or operating a motor vehicle, and that his license had been suspended for a second violation of DWI. The evidence necessary to prove defendant's DWI charge included not only that he was

23                                                    A-3439-16T4

driving, but that he was "under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug." N.J.S.A. 39:4-50. In this regard, evidence of defendant's previous DWIs, which was relevant at his trial on the indictable offense, was unnecessary to establish his guilt on the DWI charge. Further, the testimony of Galaydick and Mosakowski regarding their evaluations of defendant, was relevant only to defendant's DWI charge. Accordingly, the "same evidence" used to establish the indictable offense was not necessary to prove his DWI charge.

IV.

Next, defendant argues that the court committed error by severing the indictable charge from his motor vehicle charges. In the alternative, defendant asserts that the court erred because it failed to remand the motor vehicle charges to the municipal court. We disagree.

Pursuant to Rule 3:15-3(a)(1), "the court shall join any pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode." However, "if for any reason it appears that a defendant or the State is prejudiced by the joinder required by paragraph (a), the court may decline to join or may grant other appropriate relief." R. 3:15-3(b).

We note that defendant's first counsel failed to object to the severance of the indictable offense from the motor vehicle charges prior to either trial. Rather, defendant's new counsel only asserted that the indictable offense and motor vehicle charges should have been tried together at the March 8, 2017 sentencing hearing, after the second trial. As the court explained, "it [would have been] prejudicial for the jury to hear on the [N.J.S.A. 2C:]40-26 [charge] that [defendant] also was intoxicated." The court explained "it would be more unfair to [defendant] if the jury would hear that, not only did he violate the [c]ourt order not to drive after a second DWI, but that he drove while drunk." Accordingly, we conclude the court properly exercised its discretion under Rule 3:15-3(b), in ordering a severance. Indeed, defendant conceded, at the March 8, 2017 hearing and in his merits brief, that it would be fundamentally prejudicial to defendant if the jury heard during the trial on the indictable offense that defendant was intoxicated while driving.

Defendant improperly relies on State v. Muniz, 118 N.J. 319 (1990) to support his contention that the court was required to join his indictable offense and motor vehicle charges in a single trial. In Muniz, our Supreme Court held that "lesser-included motor vehicle offenses, if supported by evidence in the record, should be joined in the prosecution of the [New Jersey] Code [of

Criminal Justice] offense of death by auto . . . ." Id. at 332. Here, however, defendant's DWI charge is not a lesser-included offense of driving with a suspended license for a second DWI conviction.

We also disagree with defendant's argument that the court should have remanded the motor vehicle charges to municipal court. As the court correctly noted at the March 8, 2017 hearing, our Supreme Court has not made any ruling mandating that motor vehicle charges only be heard in municipal court. Further, the record before us does not demonstrate that after the first trial, defendant's counsel sought to remand the motor vehicle charges to municipal court. Accordingly, the court's exercise of jurisdiction over the second trial on defendant's motor vehicle charges was proper and not an abuse of its discretion.

V.

Defendant next maintains that the court committed error in failing to dismiss the DWI, reckless driving, careless driving, and failure to maintain a lane charges as a matter of law. We are not persuaded by any of defendant's arguments.

The court found R.G. to be a credible witness, and based on his testimony that defendant was swerving back and forth between lanes, concluded defendant was guilty of reckless driving, careless driving, and failure to maintain his lane.

With respect to the DWI charge, the court relied on the testimony of Mosakowski and Galaydick. As noted, Mosakowski testified that defendant exhibited slurred speech, was uncoordinated, and failed to satisfactorily complete the three field sobriety tests conducted. Galaydick further testified that he concluded defendant was impaired based on his poor coordination, slurred speech, abnormal blood pressure results, and various other test results. In addition, the court reviewed the MVR, which was played at trial, and showed defendant failing to satisfactorily complete the three field sobriety tests conducted by Mosakowski. As the court correctly noted, "the focus is on the effect the substance has on the physical coordination and/or mental faculties as opposed to the exact identification of the substance." See Tamburro, 68 N.J. at 421 ("It is enough if, from the subject's conduct, physical and mental condition and the symptoms displayed, a qualified expert can determine that he or she is 'under the influence' of a narcotic."). In sum, the court's findings of guilt beyond a reasonable doubt as to these charges are supported by sufficient, credible evidence in the trial record.

A-3439-16T4

## VI.

Finally, defendant claims that the trial court committed error in denying his request to dismiss the possession of CDS in a motor vehicle charge. We agree.

Pursuant to N.J.S.A. 39:4-49.1,

> No person shall operate a motor vehicle on any highway while knowingly having in his possession or in the motor vehicle any <u>controlled dangerous substance</u> . . . or any prescription legend drug, unless the person has obtained the substance or drug from, or on a valid written prescription of, a duly licensed physician . . . .
>
> [(Emphasis added).]

The elements of this offense must be established beyond a reasonable doubt. <u>State v. Bealor</u>, 187 N.J. 574, 586 (2006) ("We have repeatedly made clear that, in motor vehicle violation cases, the State's burden of proof unquestionably is beyond a reasonable doubt.").

Hearsay is a statement "other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." <u>State v. Byrd</u>, 198 N.J. 319, 336 n.5 (2009) (citing N.J.R.E. 801(c)). Hearsay is inadmissible at trial "unless specifically exempted by an evidence rule or other law." <u>Ibid.</u> (citing N.J.R.E. 802). However, "if evidence is not offered for the truth of the matter asserted, the evidence is not hearsay and no

exception to the hearsay rule is necessary to introduce that evidence at trial." State v. Long, 173 N.J.138, 152 (2002).

Mosakowski testified at trial that another officer discovered the pills in a container attached to defendant's keys. He stated that, thereafter, "[they] took the markings on the pills[,] . . . put [them] into a program called '[p]ill [i]dentifier,'" and identified the pills as Vicodin. Upon cross-examination, Mosakowski was unable to describe in detail the particular pill identifier website used, whether it was created and maintained by a pharmaceutical company, or "state-sponsored."

As noted, defendant's counsel objected to the pill identifier testimony, asserting it was hearsay. The State argued that the testimony was not offered to prove the truth of the matter asserted, but rather, to demonstrate the effect on Mosakowski's decision to charge defendant with possession of CDS in a car. The court overruled defendant's counsel's objection, admitted the testimony regarding the results of the pill identifier program, and relied upon this testimony, as well as Galaydick's testimony, to find defendant guilty of possession of Vicodin.

After a thorough review of the record, we conclude Mosakowski's testimony that he identified defendant's pills as Vicodin based on a visual

comparison of pills depicted on a pill identifier program from an unidentified website is inadmissible hearsay, as it was intended to establish the truth of the matter asserted – that the pills were Vicodin, a CDS. We find no exception to the hearsay rule that would permit Mosakowski to testify regarding the contents of the pill identifier program.

In this regard, we note that Mosakowski was not qualified as an expert witness with particular expertise in recognizing CDS. See State v. Frost, 242 N.J. Super. 601, 615 (App. Div. 1990) ("[A]n expert witness must possess the minimal technical training and knowledge essential to the expression of a meaningful and reliable opinion."). Nor was Mosakowski's testimony permissible lay opinion testimony under N.J.R.E. 701. See Neno v. Clinton, 167 N.J. 573, 585 (2001) ("A lay witness's opinion cannot rely on the inadequate support of inadmissible hearsay without the benefit of an exception."); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 4 on N.J.R.E. 701 (2018) ("[L]ay opinion testimony may not cross into the realm of expert testimony."). Rather, the court permitted Mosakowski to combine his admissible percipient observations regarding the pills (i.e., that another officer discovered the pills, which were yellow and had markings) with the substantive out of court statements contained in the pill identifier program.

The court also relied on Galaydick's expert testimony, in which he testified that he identified defendant's pills by comparing the pills' "markings" with an unidentified "drug identification bible," and by relying on Mosakowski's representation that he identified the pills as Vicodin.

"[E]xpert testimony depends on a witness's 'specialized knowledge' to address matters outside a juror's understanding." State v. Hyman, 451 N.J. Super. 429, 443 (App. Div. 2017). Accordingly, the admission of expert testimony involves the following requirements:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that such an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [Id. at 443-44 (quoting State v. Kelly, 97 N.J. 178, 208 (1984) and discussing N.J.R.E. 702).]

Additionally, N.J.R.E. 703, which "addresses the foundation for expert testimony," requires that expert opinions be grounded in:

> facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject.
>
> [Townsend v. Pierre, 221 N.J. 36, 53 (2015).]

31

N.J.R.E. 703 requires "the hearsay [to] be of the type usually relied on by experts in the field to reach 'conclusions of the type offered by the witness.'" State v. Torres, 183 N.J. 554, 576 (2005) (quoting State v. Pasterick, 285 N.J. Super. 607, 620-21 (App. Div. 1995)).  Further, while N.J.R.E. 703 permits a testifying expert to refer to a hearsay statement "for the purpose of apprising the jury of the basis for his opinion," Konop v. Rosen, 425 N.J. Super. 391, 406 (App. Div. 2012) (quoting Agha v. Feiner, 198 N.J. 50, 63 (2009)), "[t]he 'hearsay is not admissible substantively as establishing the truth of the statement.'"  Ibid. (quoting State v. Vandeweaghe, 351 N.J. Super. 467, 480 (App. Div. 2002)).

"The corollary of [Rule 703] is the net opinion rule, which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Polzo v. Cnty of Essex, 196 N.J. 569, 583 (2008) (quoting State v. Townsend, 186 N.J. 473, 494 (2006)).  Essentially, "[a]n expert must '"give the why and wherefore" that supports the opinion, "rather than a mere conclusion."'" Borough of Saddle River v. 66 East Allendale, LLC, 216 N.J. 115, 144 (2013) (quoting Polzo, 196 N.J. at 583).  In this regard, expert witnesses must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the

methodology are reliable." Townsend, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

Here, unlike his testimony regarding defendant's impairment, Galaydick's testimony regarding the identification of defendant's pills as Vicodin had no proper foundation, as he failed to provide the "why and wherefore" supporting his conclusion.[4]  Specifically, Galaydick failed to detail which particular drug identification bible he used, explain satisfactorily how he used it to identify the pills, and establish whether it was a reliable source to identify drugs. Accordingly, Galaydick's testimony regarding his identification of the pills as Vicodin is inadmissible.

Without further confirmatory proof of the pills' chemical composition, Mosakowski's and Galaydick's testimony regarding his use of the pill identifier program and drug identification bible, as the sole evidence that defendant possessed CDS in a car, is insufficient to establish the pills' classification as CDS beyond a reasonable doubt.  Accordingly, we reverse the court's finding that defendant is guilty of possession of CDS in a motor vehicle.

---

[4]  We have independently reviewed the March 1, 2017 trial transcript and conclude that Galaydick's testimony regarding defendant's impairment is properly derived from his personal observations of defendant, and not solely his identification of the Vicodin from Mosakowski's representation or the drug identification bible.  See Townsend, 221 N.J. at 53.

A-3439-16T4

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION